UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

BRANDON FOX                                                                                    PLAINTIFF

v.                                                                   CIVIL ACTION NO. 3:04-CV747-S

RONALD DESOTO

and

LOUISVILLE REGIONAL AIRPORT AUTHORITY                              DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on the motion to dismiss and for summary judgment by the defendants, Ronald DeSoto ("DeSoto") and the Louisville Regional Airport Authority ("Airport Authority"). This case involves the plaintiff's claims under 42 U.S.C. §1983 alleging deprivation of his Fourth Amendment rights as well as several state law tort and vicarious liability claims. For the reasons set forth below, the defendants' motion to dismiss will be **GRANTED in part and DENIED in part** and the defendants' motion for summary judgment will be **GRANTED as to all remaining claims.**

FACTS

On September 2, 2002, the plaintiff, Brandon Fox ("Fox"), was traveling on Southwest Airlines from Louisville to Chicago. Fox, who was then a special agent of the Internal Revenue Service ("IRS"), was authorized to fly armed. According to regulation, Fox should have been introduced to the flight crew. However, no one ever introduced Fox to the pilot, Captain Jeff Hefner ("Hefner"), or any other crew member.

1

After boarding the plane, Fox encountered some difficulty fitting his bag in an overhead bin. As he was adjusting the bags, Fox heard a female passenger repeatedly tell him that it was not going to fit. She asked him to move aside so she could pass him. Fox responded by telling her to "fuck off." The female passenger's fiancé and Fox exchanged words. Flight Attendant Rhonda Rogers immediately directed the couple to their seats, asked Fox to sit down and informed Hefner of the altercation. The flight crew then learned that Fox was a federal officer traveling armed, although Fox never showed Hefner any documentation of his credentials. Hefner spoke with Fox and informed him that he would not be permitted to continue on the flight after "verbally abusing" other passengers. Fox, escorted by Hefner, then exited the plane and went back into the terminal. Hefner had requested that airport security investigate the situation.

Officer DeSoto arrived at the gate shortly. DeSoto asked Fox to produce identification that he was a federal agent authorized to carry the gun. Fox refused to show DeSoto his credentials or to even speak with him. Rather, in accordance with his IRS and FAA training guidelines, he repeatedly requested to speak with the Ground Security Coordinator ("GSA"). Michelle Miller then approached and was introduced to Fox as the GSA. Fox, who apparently did not believe she was the GSA, refused to cooperate with Miller as well.

DeSoto then asked Fox to stand up so he could search him and they could resume their discussion outside of the terminal area away from the crowd that was forming. Again, Fox was noncompliant. DeSoto then put his hands on Fox's arm to help him up and escort him out of the terminal area. Fox jerked away, moving his hand towards his right side in a clinched fist. Fox claims he was reaching for his credentials but DeSoto interpreted this movement as "combative" and physically threatening. DeSoto responded by using "an arm-bar takedown" to immobilize Fox. Fox sustained a cut and swelling on his check and elbow as he was taken to the ground. DeSoto claims that

Fox resisted the arrest, struggling and pulling away from him. DeSoto had to request help from the Transportation Security Administration supervisor, Chris Redmon, to handcuff Fox. Fox denies resisting arrest in any way. He was charged with, and subsequently tried for, disorderly conduct and resisting arrest. The state court judge presiding over the criminal trial directed a verdict of not guilty.

Fox has now filed the instant action against DeSoto and the Airport Authority, alleging, under §1983, that DeSoto violated his Fourth Amendment rights. Fox also asserts several state law claims including assault, battery, and malicious prosecution. He asserts derivative claims against the Airport Authority for DeSoto's purported negligence as well as direct claims against the Airport Authority for negligent hiring, training and/or retention of DeSoto. The defendants seek dismissal or summary judgment on all claims.

## DISCUSSION

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party bears the burden of establishing these elements *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Not every factual dispute between the parties prevents summary judgment. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). To preclude summary judgment, the disputed facts must be material, such that "they might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The dispute must also be genuine, such that "if the facts were proven at trial, a reasonable jury could return a verdict for the non-moving party." *Id.* "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the

parties' differing versions of the dispute at trial." *60 Ivy Street Corp.*, 822 F.2d at 1435. In making these determinations, the court views all facts and inferences in a light most favorable to the nonmoving party. *Id.*

I. §1983 Claims

*Motion to Dismiss*

Fox has asserted claims under §1983 for alleged violations of his Fourth Amendment rights. He claims DeSoto conducted an illegal search and seizure when he arrested Fox and that DeSoto used excessive force in effecting the arrest.

Congress has not legislated a statute of limitations period for §1983 claims. Therefore, the courts look to the most analogous state statutes to ascertain the appropriate limitations period. The Supreme Court has held that §1983 claims should be "characterized as personal injury actions" and that courts "should borrow the general or residual statute for personal injury actions." *See Collard v. Kentucky Bd. Of Nursing*, 896 F.2d 179, 180-81 (6th Cir. 1990) (internal citations omitted). Section 1983 actions in Kentucky, therefore, are limited by the one year statute of limitations period found in its personal injury statute, KRS §413.140. *Id.* at 182-83. In the case at bar, the parties do not dispute the length of the applicable statute of limitations. Rather, they disagree as to when that limitations period begins to run. DeSoto contends that it accrues on the date of the plaintiff's purported injury - that is the day the incident and arrest occurred - whereas Fox maintains that it accrues on the date of his acquittal.

Citing *Shamaeizadeh v. Cunigan*, 182 F.3d 391 (6th Cir. 1999), Fox argues that the limitations period was tolled during the pendency of his criminal trial. In *Shamaeizadeh*, the plaintiff filed a §1983 action alleging that police officers illegally searched his home and seized evidence. Shamaeizadeh had been arrested and charged with drug and weapons crimes based on evidence

4

obtained in the search. The court ruled the search unconstitutional, which resulted in dismissal of the charges. Shamaeizadeh then filed his §1983 suit in federal court where the district court dismissed the action as untimely. The Sixth Circuit Court of Appeals reversed, holding that the one year statute of limitations period did not begin to run until the criminal charges were dismissed. *See id.* at 399.

The *Shamaeizadeh* court relied upon the Supreme Court's reasoning in the case of *Heck v. Humphrey*, 512 U.S. 477, 129 L.Ed.2d 383, 114 S.Ct. 2364 (1994). In *Heck*, the plaintiff brought a §1983 action against county prosecutors and a state police investigator, claiming that his conviction violated his constitutional rights. The *Heck* Court faced a potential conflict between a prisoner's §1983 action and a habeas action because a favorable decision would necessarily cast doubt upon the criminal defendant's conviction. *See id.* at 479-80. Thus, the Court held that a §1983 claimant in such an action must first show that his conviction has been invalidated for the §1983 claim to be cognizable. *See id.* at 486-87.

While the statute of limitations issue was not presented in *Heck*, the Sixth Circuit Court of Appeals adopted the same rationale, extending it to the tolling of the statute of limitations. *See Shamaeizadeh*, 182 F.3d at 396. First, the court recognized that *Heck* had been extended to "certain pre-conviction situations where habeas is not available." *Id.* at 397. Thus, the fact that Fox was acquitted and that Shamaeizadeh was never tried does not distinguish either case from *Heck*, in which the plaintiff was a convicted prisoner. The *Shamaeizadeh* court outlined the following test for determining whether a plaintiff must wait until the conclusion of his criminal trial to bring suit under §1983: "a §1983 plaintiff [must] show that a decision in his favor would not imply the invalidity of a future conviction." *Id.* at 398.

5

Applying this test, the *Shamaeizadeh* court concluded that the statute of limitations did not accrue until the dismissal of the charges because a decision in Shamaeizadeh's favor would have implied the invalidity of a future conviction. The central issue in Shamaeizadeh's criminal trial was the same as in his §1983 case; the lawfulness of the search would dictate both outcomes because all evidence to be used in the criminal trial was found during the challenged search. *See id.* at 398. We now apply the same test to determine whether there are common dispositive issues in Fox's §1983 claims and the criminal charges lodged against him. Specifically, we must decide if success on Fox's §1983 claims for unreasonable search and seizure and excessive force would imply the invalidity of a future conviction for either disorderly conduct or resisting arrest.

In a footnote, the *Heck* Court addressed whether a conviction for resisting arrest would preclude a claim for unreasonable search and seizure under §1983. Where a defendant is convicted of resisting arrest, "defined as intentionally preventing a peace officer from effecting a lawful arrest," "he would have to negate an element of the offense of which he was convicted" in order to prevail on the §1983 action. *Heck*, 512 U.S. at 487, n.6. The *Heck* Court noted that a lawful arrest is a necessary component to a conviction for resisting arrest, as that offense is commonly defined. Kentucky law, however, does not subscribe to that definition. The commentary to KRS §520.090, the statute criminalizing resisting arrest, explicitly states that "the unlawfulness of an arrest may not be raised as a defense to a prosecution under this section." The commentary also states, however, that the *unlawfulness of the arrest will be permitted as a defense* "where the officer used more force than is reasonably necessary to effect the arrest so that his conduct constitutes an assault on the person arrested." Fox has made §1983 claims alleging both an unreasonable search and seizure and the use of excessive force. These claims fall within the exception mentioned in the commentary as he alleges that DeSoto used more force than reasonably necessary to effect his arrest. We note that the Sixth

6

Circuit Court of Appeals has recently held that "the concerns of *Heck* are not implicated by [a] §1983 claim alleging excessive force because, regardless of the outcome of the claim, whether the [defendant is] found to have used excessive force or not, the validity of [the possible] criminal conviction [would] not be affected." *Hodge v. City of Elyria*, 126 Fed.Appx. 222, 225 (6th Cir. 2005).  Because of the language used in the commentary to KRS §520.090, the outcome of a §1983 claim *could*, however, affect Fox's potential conviction for resisting arrest by providing a defense for him.

In *Hodge*, the underlying criminal charges were possession of drugs and tampering with evidence, charges which are not affected by a claim of excessive force. The peculiarity of the resisting arrest statute distinguishes the present situation from *Hodge* and dictates a different result in the case at bar. Fox has alleged an "unlawful arrest," claiming that he was subjected to an unlawful search and seizure of his person in the absence of probable cause. The commentary to the statute states that the unlawfulness of an arrest can serve as a defense when the arresting officer used more force than reasonably necessary to effect the arrest. Fox has also made a claim of excessive force against DeSoto, alleging that he used more force than reasonably necessary in arresting Fox. Thus, a favorable judgment on these two §1983 claims would provide a defense to the crime of resisting arrest under Kentucky law.[1]  Under the *Shamaeizadeh* rationale, therefore, the statute of limitations did not accrue until the judge directed a verdict of not guilty for Fox. Accordingly, the defendants' motion to dismiss these claims as time-barred will be denied. In the alternative, however, the defendants have made a motion for summary judgment on all claims asserted against them.

*Motion for Summary Judgment*

---

[1] The facts supporting Fox's claims for unlawful search and seizure and for excessive force are all related to the purported "unlawful arrest," which may serve as a defense in the resisting arrest trial. Thus, both §1983 claims survive dismissal on the statute of limitations issue.

As the basis for the motion for summary judgment, DeSoto asserts the defense of qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).Courts use a three-step inquiry when considering the applicability of qualified immunity.

First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (*en banc*) (citations omitted).

**A. Unreasonable Search and Seizure**

In evaluating whether a constitutional violation occurred, we first consider Fox's §1983 claim for unreasonable search and seizure. Fox alleges that DeSoto violated his constitutional rights because he searched and arrested him without probable cause. Fox claims that because he was simply sitting quietly on the bench, DeSoto had no probable cause to arrest him. Plaintiff's Response (DN 27), p. 21. DeSoto argues, on the other hand, that he did have probable cause to arrest Fox who was armed and refusing to cooperate with the officers. We find that DeSoto had probable cause to arrest Fox.

"The probable cause doctrine is a flexible, commonsense standard [that] requires that the facts available to the officer would warrant a man of reasonable caution to believe that a crime is afoot." *U.S. v. Copeland*, 321 F.3d 582, 592 (6th Cir. 1992) (internal quotations omitted). In assessing whether probable cause exists, we must consider the totality of the circumstances from the officer's perspective

at the time of the incident, without the benefit of hindsight. *Id*. Thus, the fact that Fox was acquitted of the criminal charges stemming from his arrest does not preclude a finding of probable cause if DeSoto reasonably believed that he had committed a violation. *See id.* At the time of Fox's arrest, DeSoto had been informed that a passenger armed with a gun had caused a disruption while on board a plane and that the pilot had kicked the passenger off the plane for his behavior. DeSoto arrived to find an uncooperative Fox, refusing to identify himself or produce any credentials qualifying him to fly armed. When the GSC arrived on the scene, Fox also refused to speak with her despite the fact that he had repeatedly requested to speak with the GSC. When DeSoto initiated a search on Fox, Fox jerked towards his right side. DeSoto claims that his fist was clinched and that he feared Fox was a danger to himself or others when he pulled away. Fox claims he was merely reaching for his credentials.

Assuming that Fox was simply reaching for his credentials, DeSoto's fear was nonetheless reasonable. Fox had repeatedly refused to provide his credentials and Fox gave no indication that he was suddenly willing to comply. A reasonable police officer could have interpreted Fox's movements - which were made just as DeSoto began to search him - as threatening. The risk was particularly high in this situation: an armed individual who had been ejected from an airplane for disruptive conduct was refusing to answer simple inquiries made by airport security officers. We conclude that these facts, all known to DeSoto at the time of the arrest, support DeSoto's belief that Fox as "an armed and unpredictable security risk." Motion for Summary Judgment (DN 24), p. 17. We find, therefore, that the arrest was constitutional.

Assuming, however, that the arrest was unlawful, we will proceed with the second step of the qualified immunity analysis. That is, we must decide if the right that was allegedly violated was clearly established. For the right to be clearly established, "[t]he contours of the right must be

9

sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (citation omitted). Fox identifies the right as his Fourth Amendment freedom from unreasonable searches and seizures. Considering the facts discussed above, a reasonable police officer would not understand that his actions violated Fox's Fourth Amendment rights. On the contrary, we conclude that a reasonable police officer would conduct a limited search of an armed and uncooperative individual, refusing to provide identification in the Security Identification Area of the airport.[2] *See, e.g., Terry v. Ohio*, 392 U.S. 1, 22, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (officer may "approach an individual for purposes of investigating possibly criminal behavior even though there is no probable cause to make arrest;" in such circumstances, the officer may conduct a limited search for weapons when "nothing in the initial stages of the encounter serves to dispel his reasonable fear from his own or others' safety.").

Even if DeSoto did violate a clearly established right when he searched and arrested Fox, Fox has not alleged sufficient facts to determine that DeSoto's actions were objectively unreasonable, the third inquiry of the relevant test. Qualified immunity provides police officers with "ample room for mistaken judgments by protecting all but the plainly incompetent and those who knowingly violate the law." *Sova v. City of Mount Pleasant*, 142 F.3d 898, 902 (6th Cir. 1998) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). Fox has not provided sufficient evidence establishing that DeSoto's actions rise to the level of plainly incompetent or that he knowingly violated the law. It is not objectively unreasonable for a police officer to conduct a limited search of an individual who was ejected from the plane and subsequently refused to provide identification or answer any questions posed by security personnel in an airport. Likewise, it is not objectively unreasonable

---

[2] In the SIDA, officers are authorized to "carry out measures to prevent the unauthorized presence and movement of individuals" by enforcing identification procedures such as subjecting potentially unauthorized individuals "to employment history verification." 49 C.F.R. §1542.205.

for an officer to arrest such person who makes a threatening movement when the officer begins to search him. Fox asserts that DeSoto acted without probable cause, but provides absolutely no evidence or argument as to why DeSoto's actions were objectively unreasonable,[3] even assuming he acted without probable cause. *See* Plaintiff's Response (DN 27), p. 21.

### B. Excessive Force

With regard to his §1983 claim for excessive force, we apply the same three part test. First, we must determine whether DeSoto's use of force violated Fox's right to freedom from unreasonable seizure. The Supreme Court has held that "all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Conner*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The analysis requires that we "look to the totality of the circumstances to determine whether the force used was reasonable" and also "focus on the very moment the officers make 'split-second judgments . . . .'" *Dickerson v. McClellan*, 101 F.3d 1151, 1161-62 (6th Cir. 1996) (citing *Tennessee v. Garner*, 471 U.S., 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *Greenridge v. Ruffin*, 927 F.2d 789 (4th Cir. 1991)). As discussed above, we find that DeSoto, dealing with an armed and noncompliant Fox, acted constitutionally when he arrested Fox as he jerked towards his right side. We find that these same circumstances justified DeSoto's belief that he needed to take Fox to the ground. DeSoto's use of the "arm-bar take down" procedure, a

---

[3] Fox also asserts a claim against DeSoto and the Airport Authority, under a theory of vicarious liability, for negligent conduct. The defendants submit that these claims are also subject to a one year statute of limitations because "the essence of the tort is bodily harm." Defendant's Motion to Dismiss or for Summary Judgment (DN 24), p. 10. Fox failed to respond to this argument. Even assuming, however, that his negligence and vicarious liability claims were not time-barred, they cannot survive the motion for summary judgment. Our conclusion that DeSoto acted with objective legal reasonableness requires dismissal of the negligence claims, as well as those for punitive damages.

11

standard police procedure, was not an excessive use of force when he feared for the safety of himself and others.

Even if a constitutional violation occurred, Fox's right was not so clearly established that a reasonable person in DeSoto's position would know that his conduct violated that right. The Supreme Court has stated that the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 96-97. DeSoto knew that Fox, who had been completely unresponsive and noncompliant, was armed. When Fox pulled away from DeSoto, moving his arm in a potentially threatening manner, DeSoto acted reasonably in incapacitating Fox. Building on his argument that DeSoto had no probable cause to arrest him, Fox suggests that DeSoto was not justified in using any force. Plaintiff's Response (DN 27), p. 21. DeSoto did initiate the physical encounter by taking Fox's arm. However, all excessive force cases

> begin with the decision of a police officer to do something to help, to arrest, to inquire. If the officer had decided to do nothing, then no force would have been used. In this sense, the police officer always causes the trouble. But it is trouble which the police officer is sworn to cause, which society pays him to cause and which, if kept within constitutional limits, society praises the officer for causing.

*Dickerson v. McClellan,* 101 F.3d 1151, 1161 (6th Cir. 1996) (quoting *Plakas v. Drinski*, 19 F.3d 1143 (7th Cir.), *cert. denied,* 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 34 (1994)). The *Dickerson* court held that the court must evaluate "whether the force used to effect the seizure was reasonable in the totality of the circumstances, not whether it was reasonable for the police to create the circumstances." *Id*. at 1161 (citations omitted).

In this case, DeSoto acted with objective reasonableness. Even if he were mistaken regarding the amount of force necessary to effectuate Fox's arrest, DeSoto is protected by qualified immunity.

"[I]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Malley v. Briggs*, 47 U.S. 335, 341 (1986). Thus, even assuming that Fox did not need to be incapacitated by the take-down procedure, DeSoto is protected. Any mistake as to the amount of force necessary was certainly reasonable under the circumstances described above. Again, DeSoto's actions simply did not rise to the level of "plainly incompetent" and Fox has failed to produce sufficient evidence that DeSoto "knowingly violate[d] the law." *See Sova*, 142 F.3d at 902.

### II. State law tort claims

Fox, who has also asserted state law claims, suggests that all of his claims stem from "his unlawful search, seizure and arrest" and that all claims, "whether interpreted under federal or state law, would not have been viable claims until the dismissal of his criminal charges." Plaintiff's Response (DN 27), p. 11. He provides no authority, however, for this proposition. It is clear that *Heck* and its progeny only control §1983 claims; Fox cites no cases in which a court has extended the holding to cover state law tort claims. In fact, the Kentucky Court of Appeals, in a recent unpublished opinion, has held that state law claims such as false arrest, false imprisonment and assault and battery "accrue on the date of the arrest; or at the latest, at the time of termination of imprisonment." *Dunn v. Felty*, 2005 WL 736596, *2 (Ky. App. Apr. 01, 2005).[4] In his complaint, Fox asserted claims for assault, battery, false imprisonment and false arrest. While the parties briefed the claims for assault and battery, they did not specifically discuss the false imprisonment or false arrest claims. To the extent that Fox asserts claims for any of these state law tort actions, they will be dismissed as time-barred. Thus, the defendants' motion to dismiss will be granted as to these claims.

### III. Negligent Hiring, Training and Retention

---

[4] We note that the Kentucky Supreme Court has granted discretionary review of this case and the appeal is still pending.

Fox states that his claims against the Airport Authority "arising under §1983 are based on an assertion that the [Airport Authority] had failed to exercise ordinary care in the hiring, training and/or retention of its police officers." Plaintiff's Response (DN 27), p. 22. The only case he cites to support his claim is *Oakley v. Flor-Shin, Inc.,* 964 S.W.2d 438 (Ky. App. 1998), a case in which the state court considered a state law claim for negligent hiring. Negligent hiring is, in fact, a state law claim.

To the extent that Fox pursues a hiring, retention or failure to train claim under §1983, the applicable standard is one of deliberate indifference, or *intentional* tort liability. *See, e.g., City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under §1983."); *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 411 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ("Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'"). The "ordinary care" language referenced by Fox simply does not apply to §1983 actions and he has alleged no facts sufficient to support a §1983 claim, where the standard is "deliberate indifference."[5]

IV. Malicious Prosecution

Fox also asserts claims for malicious prosecution. It is undisputed that the statute of limitations for malicious prosecution did not begin to run until the end of Fox's criminal prosecution. As his malicious prosecution claims are timely, we will proceed on the merits of these claims.

---

[5] It remains unclear whether Fox is asserting a negligent hiring, training, or retention claim against the Airport Authority. To the extent that he does, we decline to exercise our supplemental jurisdiction over this purely state law claim as we have dismissed all of his federal claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The Sixth Circuit has held that actors "cannot be held liable for malicious prosecution when [they] did not make the decision to prosecute" the plaintiff. *See Skousen v. Brighton High School*, 305 F.3d 520, 529 (6th Cir. 2002); *McKinley v. City of Mansfield,* 404 F.3d 418, 444 (6th Cir. 2005). While the police officer in *Skousen* did not actually arrest Skousen, he did file a police report against her when he learned that she had allegedly assaulted her child. In *McKinley*, a formal patrol officer sued the city and five of its officers and officials for malicious prosecution. The *McKinley* court affirmed the dismissal of the malicious prosecution claim because "McKinley presents no evidence suggesting that defendants conspired with, influenced, or even participated in, [the prosecutor's] decision to bring charges against him." *McKinley*, 404 F.3d at 444. Similarly, Fox has presented no evidence to suggest that DeSoto influenced or participated in the decision to prosecute Fox.[6] Accordingly, Fox has failed to establish his malicious prosecution claim.

Even if Fox could overcome this hurdle, he would still have to prove the following elements of his *prima facie* case: (1) institution or continuation of judicial proceedings; (2) by, or at the instance, of the defendant; (3) termination of such proceedings in favor of the plaintiff; (4) malice in the institution of the proceeding; (5) lack of probable cause for the proceeding; and (6) suffering of damages as result of the proceeding. *Raine v. Drasin*, 621 S.W.2d 898, 899 (Ky. 1981). As already noted, the record is devoid of evidence indicating what role, if any, DeSoto played in instituting the criminal trial against Fox. Thus, he has failed to carry his initial burden with regard to the second element. Additionally, Fox has failed to produce any evidence as to the fourth and fifth elements. Rather, he makes conclusory statements with no supporting citations to the record indicating that DeSoto lacked probable cause to arrest Fox and that he acted with malice. Plaintiff's Response (DN

---

[6] DeSoto was a testifying witness in the trial.

27), p. 29. As Fox has not produced enough evidence to establish his *prima facie* case, we will grant the defendants' motion for summary judgment on the malicious prosecution claims as well.

For the reasons set forth above, the court will grant the defendants' motion to dismiss the state law tort claims, but deny the motion to dismiss the §1983 claims. The court will grant the defendants' motion for summary judgment on the §1983 claims and all remaining claims as well. A separate order will be entered herein this date in accordance with this opinion.

cc: Counsel of Record

27), p. 29. As Fox has not produced enough evidence to establish his *prima facie* case, we will grant the defendants' motion for summary judgment on the malicious prosecution claims as well.

For the reasons set forth above, the court will grant the defendants' motion to dismiss the state law tort claims, but deny the motion to dismiss the §1983 claims. The court will grant the defendants' motion for summary judgment on the §1983 claims and all remaining claims as well. A separate order will be entered herein this date in accordance with this opinion.

cc: Counsel of Record